UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANDRE BADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00041-JMS-DLP |
| | ) | |
| Mr. F. GRANGER Lieutenant, | ) | |
| DEREK MOORE Correctional Officer, | ) | |
| D. MOORE Lieutenant, | ) | |
| J. SIMS Officer, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Order Granting Defendants' Motion to Dismiss First Amendment Claims
for Failure to State a Claim, and Denying as Moot Officer Sims's
Motion for Partial Summary Judgment on Failure to Exhaust Defense**

In January 2017, plaintiff Andre Badley filed this lawsuit asserting that defendants
Lieutenant Granger, Officer Derek Moore, and Lieutenant D. Moore retaliated against him in early
February 2015 for filing grievances. Mr. Badley also asserts that Lieutenant Granger failed to
protect him from an assault from another inmate, in violation of the Eighth Amendment. In
January 2018, defendant Officer J. Sims was added as a defendant related to Mr. Badley's claim
that he was retaliated against. *See* Dkt. No. 55.

Presently pending before the Court is defendants' motion to dismiss the First Amendment
claims pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 71. Defendant Sims has filed a notice of
joinder in defendants' motion to dismiss. Dkt. No. 98.

**I. Standard of Review**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to
relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with

"fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing

the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all

permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d

883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The

Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for

relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations

must plausibly state an entitlement to relief "to a degree that rises above the speculative level."

*Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Id*.

## II.     Background

The following are the factual allegations in the Complaint, which the Court must accept as

true at this time:

In January 2015, after Mr. Badley filed a grievance alleging employee misconduct on the

part of Lieutenant Granger, Lieutenant Moore attempted to discourage him from submitting such

grievances. Mr. Badley was then subjected a body cavity search by Granger and denied his

evening meal. His cell was searched and Officer D. Moore wrote a false report that heroin was

found. Because drugs were stated to have been found, he was transferred to the Special Housing

Unit. Defendant Lieutenant Moore told him, "I told you to drop your complaint on Lieutenant

Granger, you been around long enough to know how we get down." Then, Mr. Badley was placed in a cell with an inmate who Granger knew would assault him, and who did assault him.

Mr. Badley next told former Warden LaRiva, not a defendant in this action, that he was placed in the SHU based on a false report of possession of heroin, but former Warden LaRiva responded that it was heroin in his cell. Mr. Badley was then called to Lieutenant Moore's office and Lieutenant Moore told him that he needed to drop his complaint against Granger or she would have him transferred and write an incident report for operating a gambling pool. Mr. Badley then complained to former Warden Daniels, also not a defendant in this action, that officers were threatening him and former Warden Daniels told him to send an email and file a grievance. A few months later, after he believed he was harassed and his cell was searched and "destroyed," Mr. Badley again complained to former Warden Daniels that he was being mistreated for filing grievances and former Warden Daniels told him he needed to "drop his complaints."

### III. Discussion

Defendants have filed a Motion to Dismiss, arguing that Mr. Badley's First Amendment claim fails as a matter of law as against all Defendants. Specifically, they argue that Mr. Badley's First Amendment retaliation claims against the individual defendants must be dismissed because the United States Supreme Court has not recognized a right of action under *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), for First Amendment retaliation. *See Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). In response, Mr. Badley argues that violations of the First Amendment do not create a new *Bivens* context, and that filing a lawsuit in the court is the proper way to seek redress when the Bureau of Prisons' administrative process fails to provide a proper remedy.

While prisoners do not have unfettered First Amendment rights, the rights they retain may not be infringed upon by prison officials retaliating against them for exercising those rights.

*Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 592-93 (1998). But *Crawford-El* was a 42 U.S.C. § 1983 action, not a *Bivens* action. Last year the Supreme Court in *Abbasi*, clarified the very limited scope of *Bivens* actions. If the asserted *Bivens* claim is not one of the three *Bivens*-type actions previously recognized by the Supreme Court, closer scrutiny is required. This calls into question whether a First Amendment free speech retaliation claim is a viable claim when asserted against federal officials.

The Supreme Court has recognized a *Bivens* remedy in only three cases: (1) a Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant, *Bivens*, 403 U.S. 388; (2) a Fifth Amendment gender discrimination claim against a congressman for firing his female administrative assistant, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma, *Carlson v. Green*, 446 U.S. 14 (1980). To determine whether a case presents a new *Bivens* context, the *Abbasi* court explained: "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Abbasi*, 137 S. Ct. at 1859. To determine whether a *Bivens* remedy is available for a claim outside of these three circumstances, this Court must ask whether there are any other "special factors counseling hesitation before authorizing a new kind of federal litigation," including whether there is "'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id*. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). As the *Abbasi* court explained:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive.

A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S.Ct. at 1859-60. The *Abbasi* court also pointed out that it had declined to extend

*Bivens* in a number of contexts, including:

[A] First Amendment suit against a federal employer; a race-discrimination suit against military officers; a substantive due process suit against military officers; a procedural due process suit against Social Security officials; a procedural due process suit against a federal agency for wrongful termination; an Eighth Amendment suit against a private prison operator; a due process suit against officials from the Bureau of Land Management; and an Eighth Amendment suit against prison guards at a private prison.

*Id*. at 1857 (citations omitted); *see also Khorrami v. Rolince*, 713 Fed. App'x. 494, 499 (7th Cir.

2017) ("the Supreme Court has been hesitant to expand the right to sue under an implied cause of

action" under *Bivens*).

Mr. Badley's First Amendment claim in this case is unlike the Fourth Amendment

unreasonable seizure claim at issue in *Bivens*, the gender discrimination claim in *Davis*, or the

deliberate indifference claim in *Carlson*. And while the Supreme Court has assumed in some cases

without deciding that a *Bivens* remedy is available for a First Amendment claim, it has never

identified one. *See Wood v. Moss*, 134 S.Ct. 2056, 2066 (2014); *Reichle v. Howards*, 566 U.S.

658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims"); *Iqbal*,

556 U.S. at 675 (assuming, without deciding, that a free exercise claim was available because the

issue was not raised on appeal, but noting that the reluctance to extend *Bivens* "might well have

disposed of respondent's First Amendment claim of religious discrimination" because "we have

declined to extend *Bivens* to a claim sounding in the First Amendment").

Accordingly, the Court considers whether the type of "special factors" discussed by the *Abbasi* court as justifying extending *Bivens* are present here. The *Abassi* Court held that if the questioned claim is indeed a "new *Bivens* context" claim, then the district court must next ask "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Abbasi*, 137 S. Ct. at 1865. And this Court must also consider whether special factors counsel hesitation in recognizing a *Bivens* remedy.

In 2009, the Supreme Court made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity. *Iqbal*, 556 U.S. at 675. This is in accord with the Supreme Court's observation that it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). Indeed, the Supreme Court has refused to extend *Bivens* for the past thirty-five years. In this light, recognizing a new *Bivens* remedy would require extraordinary circumstances, which certainly counsels hesitation.

Turning first to whether Mr. Badley has alternative remedies he may use to address his retaliation claims, he has, of course, the Bureau of Prisons' administrative remedy process. He may bring retaliation conduct to the attention of administrators and seek non-monetary remedies. For any injuries he might have sustained, he is able to bring a claim under the Federal Torts Claim Act. Any retaliation that extends his confinement might be actionable in habeas corpus. And any retaliation that results in a violation of a previously recognized *Bivens* claim is another alternate remedy Mr. Badley may pursue. As defendants point out, Mr. Badley is simultaneously litigating an Eighth Amendment claim under *Bivens* in this case involving many of the same injuries he complains about with regard to his First Amendment claim. He has also filed many grievances

concerning some of the allegations in this action. Thus, Mr. Badley is not without a remedy to address the core concerns of his problems. Thus, this Court concludes that Mr. Badley has alternative remedies he may use to address the retaliation issues.

Finally, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Abassi*, 137 S. Ct. at 1865. As noted by the Supreme Court:

> Some 15 years after *Carlson* [*v. Green*, 446 U.S. 14 (1980)] was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* (internal citations omitted).

In passing the Prison Litigation Reform Act of 1995 (the "PLRA"), Congress "placed a series of controls on prisoner suits . . . designed to prevent sportive filings in federal court." *Skinner v. Switzer*, 562 U.S. 521, 535–36 (2011). Congress did so with the intent to "reduce the quantity of inmate suits." *Jones v. Bock*, 549 U.S. 199, 223 (2007). Congress has been active in the area of prisoners' rights, and its actions – *not* creating new rights – do not support the creation of a new *Bivens* claim.

For these reasons, the Court holds that the special factors analysis dictates hesitation in applying *Bivens* to First Amendment retaliation claims and that judicial intervention with the creation of a retaliation claim against federal actors is not warranted.

### IV.    Conclusion

Mr. Badley's First Amendment retaliation claims are foreclosed by *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). It is not one of the three *Bivens*-type claims recognized by the Supreme Court.

Mr. Badley has administrative and other judicial remedies available to him for the underlying claims that eventually gave rise to the instant claim, and the nature of the instant claims are not of such gravity to require judicial intervention and the creation of a new *Bivens* action. Defendants' motion to dismiss First Amendment claims for failure to state claim, Dkt. No. [71], is **granted.**

Thus, the only claim remaining in this case is Mr. Badley's Eighth Amendment claim against Lieutenant Granger. All other claims have been dismissed, and all claims against Officer Derek Moore, Lieutenant D. Moore, and Officer J. Sims are dismissed. The clerk is **directed to terminate** Officer Derek Moore, Lieutenant D. Moore, and Officer J. Sims on the docket.

Because Officer J. Sims is dismissed from this action, Officer Sims's motion for partial summary judgment on failure to exhaust defense, Dkt. No. [95], is **denied as moot**.

No partial judgment will issue at this time.

**IT IS SO ORDERED.**

Date: 6/18/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ANDRE BADLEY
35563-060
FLORENCE - HIGH USP
FLORENCE HIGH U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 7000
FLORENCE, CO 81226

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
Gina.Shields@usdoj.gov