UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANDRE BADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00041-JMS-DLP |
| | ) | |
| Mr. F. GRANGER Lieutenant, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Granting Defendant Granger's Motion for Summary Judgment
on Failure to Exhaust Defense and Directing Entry of Final Judgment**

### I.      Background

Plaintiff Andre Badley, an inmate at the United States Penitentiary (High) in Florence, Colorado, filed this civil action based on events and circumstances which occurred while Mr. Badley was incarcerated at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute").  Mr. Badley asserted that defendants Lieutenant Granger, Officer Derek Moore, Lieutenant D. Moore, and Officer J. Sims retaliated against him in early February 2015 for filing grievances.  Mr. Badley also asserts that Lieutenant Granger failed to protect him from an assault on February 1, 2015, by another inmate, in violation of the Eighth Amendment.

On June 18, 2018, the Court granted defendants' motion to dismiss the First Amendment retaliation claims.  *See* dkt. 100.  The only claim remaining is Mr. Badley's Eighth Amendment claim against Lieutenant Granger for failure to protect.

Defendant Lieutenant Granger now seeks summary judgment arguing that Mr. Badley failed to exhaust his available administrative remedies as required by the Prison Litigation Reform

Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit. For the reasons explained below, the motion for summary judgment, dkt. 74, is **granted.**

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" designated evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91; *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendant's burden to establish that the administrative process was available to Mr. Badley. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is

'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### III. Undisputed Facts

The following facts, construed in the manner most favorable to Mr. Badley as the non-movant, are undisputed for purposes of the motion for summary judgment.

Mr. Badley was an inmate at USP Terre Haute from February 28, 2013, through October 10, 2017. On November 10, 2017, he was transferred to the United States Penitentiary (High) in Florence Colorado, and is still housed there.

### A. Bureau of Prisons' Administrative Remedy System

The Bureau of Prisons (BOP) has promulgated an administrative remedy system which appears at 28 C.F.R. § 542.10, *et seq.*, and BOP Program Statement 1330.18, Administrative Remedy Program ("P.S. 1330.18"), available at http://www.bop.gov/policy/progstat/1330_018.pdf, which was in effect at USP Terre Haute during the entire time that Mr. Badley was housed there. The BOP administrative remedy process is a method by which an inmate may seek formal review of a complaint related to any aspect of his imprisonment. 28 C.F.R. § 542.10.

All BOP Program Statements are available for inmate access via their respective institution law library, including BOP Program Statement 1330.18, Administrative Remedy Procedures for Inmates, and Institution Supplement THX-1330.18B, Administrative Remedy Program. Additionally, administrative remedy filing procedures are outlined and explained to the inmates each time they arrive at a federal prison as part of the Admission and Orientation process. Inmates are likewise instructed at USP Terre Haute where to find the BOP Policy, FCC Terre Haute

4

Institution Supplements, and how to access the inmate Electronic Law Library. Finally, inmates are informed that if they have an issue or question for staff, they can ask in-person or submit an Inmate Request to Staff by hard copy or electronically to a staff resource e-mailbox. Mr. Badley acknowledged that he received information concerning the BOP administrative remedy program upon his arrival at USP Terre Haute. Dkt. 74-3.

All administrative remedy requests filed by inmates are logged and tracked in the SENTRY computer database, which is an electronic record keeping system utilized by the BOP. To exhaust his remedies, an inmate must typically first file an informal remedy request through an appropriate institution staff member via a BP-8 prior to filing a formal administrative remedy. If the inmate is not satisfied with the response to his informal remedy (BP-8), he is required to first address his complaint with the Warden via a BP-9. BP-9s are identified in the SENTRY database by the notation "F1." If the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director via a BP-10. BP-10s are identified in the SENTRY database by the notation "R1." If he is dissatisfied with the Regional Director's response, then the inmate may appeal to the General Counsel via a BP-11. BP-11s are identified in the SENTRY database by the notation "A1." An inmate who has filed administrative remedies at all required levels and who has received a response to his appeal from the General Counsel, is deemed to have exhausted his administrative remedies as to the specific issue, or issues, properly raised therein. *See* 28 C.F.R. § 542.15 ("Appeal to the General Counsel is the final administrative appeal."). Although assigned a remedy identification number, rejected submissions are not considered "filed" and copies are not required to be maintained by the agency unless the submission was deemed "sensitive."

The deadline for completion of informal resolution and submission of a formal written administrative remedy request, on the appropriate BP-9 form, is 20 calendar days following the date on which the basis for the request occurred. *See* 28 C.F.R. § 542.14(a).

Appeals of a DHO hearing are filed directly with the Regional Direction. Another exception to the initial filing at the institutional level (BP-9) exists if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution. 28 C.F.R. §542.14. In this instance, the inmate may submit the initial request directly to the Regional Director (sensitive BP-10), and the submission must contain the word "sensitive" on the envelope, and contain a written explanation of the inmate's reasoning for not following the normal course and filing initially at the institutional level. If the Regional Administrative Remedy Coordinator agrees the issue is sensitive, the Request will be accepted, and processed accordingly. If the Regional Administrative Remedy Coordinator disagrees, the request will not be accepted (i.e., rejected), the inmate will be advised of the rejection in writing, and the inmate will be directed to initiate his exhaustion efforts locally at the institutional level by filing a BP-9 with the Warden. An inappropriate sensitive BP-10 which is rejected at the Regional level does not initiate the BOP's administrative remedy process, nor does it qualify as complete exhaustion as to the issues raised therein.

### B. Mr. Badley's Administrative Remedies

A full report of Mr. Badley's administrative remedy requests was run in SENTRY on March 27, 2018, which reflected that Mr. Badley has submitted a total of 49 administrative remedies during his incarceration. *See* Dkt. 74-5. 39 of those administrative remedies were submitted during his incarceration at USP Terre Haute. Of those remedies, Mr. Badley properly submitted a BP-11 that the BOP's Central Office both accepted and responded to in only six

remedy case numbers — Remedy Case Nos. 810611, 814812, 815967, 818933, 874630, and 900769. *See* Dkt. 74-5 at 7-26. Mr. Badley asserts that Remedy Case No. 817280 was also a properly submitted remedy that was improperly rejected. *See* Dkt. 87 at 3.

### C.     Remedy Case No. 810611

On May 17, 2014, Mr. Badley was issued Incident Report No. 2583824, which charged him with a Code 113, possession of drugs; Code 325, conducting a gambling pool; and Code 326, gambling paraphernalia. Dkt. 74-6 at 14-16. Ultimately, the hearing officer dismissed the gambling charges and found that, based upon the greater weight of the evidence, Mr. Badley committed a Code 113, possession of drugs, specifically marijuana.

On February 13, 2015, Mr. Badley submitted Remedy No. 810611-R1, in which he appealed the hearing officer's finding that he had possessed drugs, directly to the BOP's North Central Regional Office. The Regional Director responded on March 25, 2015, denying his appeal. Mr. Badley then submitted Remedy No. 810611-A1 to the Central Office on April 27, 2015. The BOP's Central Office denied his appeal on May 10, 2016.

Mr. Badley asserts that his filings in Remedy Case No. 810611 explain "how the retaliation started" and alerted the BOP as to Lieutenant Granger's misconduct. *See* Dkt. 87 at 6. However, the submissions in Remedy Case No. 810611 only discuss a search and seizure Lieutenant Granger conducted on May 17, 2014, and fail to discuss any failure to protect or assault by an inmate on February 1, 2015. *See* Dkt. 74-6.

### D.     Incident Report No. 2677989

On January 31, 2015, Mr. Badley was issued Incident Report No. 2677989, which charged him with a Code 113, possession of narcotics, marijuana, drugs, or related paraphernalia, and a Code 305, possession of anything not authorized, after a clear plastic bag containing a "yellowish

white powder," which was initially thought to be heroin, and a bag of over 3,000 stamps were found in his cell. *See* Dkt. 74-11 at 7-8.

## E. Remedy Case No. 810817

On February 13, 2015, Mr. Badley submitted Remedy No. 810817-R1 directly to the Regional Office. Dkt. 74-7 at 2-3. In his submission, Mr. Badley complains about the substance that was found in his cell and requests "a full investigation into someone attempting to frame" him by placing heroin in his cell. *Id.* The North Central Regional Office rejected Remedy No. 810817-R1 as it was not sensitive and directed Mr. Badley to file at the appropriate level via regular procedures. *Id.* at 1. The SENTRY printout of Badley's remedy filings contains no subsequent submissions indicating an attempt to file this remedy number at the proper level or on the proper form. *See* Dkt. 74-5.

Mr. Badley asserts that his filing in Remedy Case No. 810817 demonstrates that he asked for a full investigation into being framed with a false heroin charge and explains in detail the retaliation and misconduct. *See* Dkt. 87 at 6. However, the submissions in Remedy Case No. 810817 only discuss a search of Mr. Badley's cell that Lieutenant Granger conducted and the prior May 2014 search and seizure, and fail to allege any failure to protect or assault by an inmate. *See* Dkt. 74-6.

## F. Remedy Case No. 814812

On March 24, 2015, Mr. Badley submitted Remedy No. 814812-F1 at the institutional level, requesting the name of the staff member that tested the powdery substance found in his cell. *See* Dkt. 74-8 at 8-13; Dkt. 74-9 at 1-8. The Warden responded on May 18, 2015, denying Mr. Badley's remedy. Dkt. 74-8 at 7. Mr. Badley then submitted Remedy No. 814812-R2 to the North Central Regional Office on June 8, 2015. *Id.* at 5-6. The Regional Director denied Mr. Badley's

appeal on July 15, 2015. *Id.* at 4. Mr. Badley filed Remedy No. 814812-A1 with the Central Office on August 17, 2015, complaining again about the testing done on the substance found in his cell. *Id.* at 2. The Central Office responded to Remedy No. 814821-A1 on October 17, 2016. *Id.* at 1.

Mr. Badley asserts that his filing in Remedy Case No. 814812 is not limited just to complaining about testing done on the substance but also put the BOP on notice about retaliation and misconduct by Lieutenant Granger. Dkt. 87 at 7-8. However, the submissions in Remedy Case No. 814812 only request information about the testing of the substance, and fail to disclose or allege any failure to protect or assault by an inmate. *See* Dkt. 74-8.

### G. Remedy Case No. 815967

Mr. Badley submitted Remedy No. 815967-F1 at the institutional level on April 1, 2015. Dkt. 74-10 at 8-9. In his submission, Mr. Badley alleges that Lieutenant Moore called him into the Lieutenant's Office on March 27, 2015, and requested that he drop a remedy he filed regarding Lieutenant Granger or she would write him up for running a gambling pool and transfer him. *Id.* The Warden responded on May 18, 2015, denying Mr. Badley's remedy. *Id.* at 10. Mr. Badley then submitted a BP-10 to the Regional Office on June 5, 2015, to which the Regional Office responded on June 24, 2015. *Id.* at 4-6. On July 28, 2015, Mr. Badley filed Remedy No. 815967-A1 with the Central Office; the Central Office responded on August 13, 2015. *Id.* at 1-2.

Mr. Badley asserts that his filing in Remedy Case No. 815967 discusses a meeting in which he notified the staff regarding Lieutenant Granger's falsification of evidence and documents. Dkt. 87 at 8. He also asserts that during this meeting, he informed them that he was placed in a cell with a mentally unstable inmate that was likely to assault him. *Id.* However, the submissions in Remedy Case No. 815967 only discuss the alleged falsification of information and threats

9

regarding running a gambling pool, but fail to disclose any failure to protect or assault by an inmate. *See* Dkt. 74-10.

## H. Remedy Case No. 817280

On March 24, 2015, Mr. Badley submitted a BP-8 in Remedy Case No. 817280 which states, "[t]his is to resolve the loss of my property while in SHU. . . . *I am not alleging any particular staff misconduct in this informal resolution attempt at this point*. I am only respectfully requesting that I get my property or be provided with its value of my loss." Dkt. 88-5 at 1-2 (emphasis added). There is no discussion in his BP-8 regarding misconduct by Lieutenant Granger or any assault by an inmate. Counselor Tatlock responded to the BP-8 on April 10, 2015. *Id.* at 1.

Mr. Badley submitted Remedy No. 817280-F1 at the institutional level on April 13, 2015. Dkt. 88-5 at 4-6. In his submission, Mr. Badley discusses the falsified charge of possession of heroin and the loss of property as a result. *Id.* The Warden responded on April 13, 2015, denying Mr. Badley's remedy as untimely and not including a copy of his inventory list of missing items. *Id.* at 4. There are no allegations in the BP-8 or BP-9 regarding the assault by any other inmate.

Mr. Badley then submitted a BP-10 to the Regional Office on May 5, 2015, which the Regional Office rejected on May 6, 2015, for failing to first file a BP-9. *Id.* at 7-10. In the midst of his submission listing his disagreement with the rejection reasons related to the BP-9, he gives his version of the narrative background, writing:

> i [sic] was sent to the SHU for a knowingly false heroin charge by Lt. Granger on 1-31-15 triggering all of this and the causing of these filings about my property. I was intentionally placed in a cell with a mentally unstable inmate on 1-31-15 which I attempted to reject to be roommates with but was denied the request and forced to go in there with. On 2-01-15 i [sic] was assaulted by this inmate Ward ID# unknown but the region can in fact retrieve these facts. I was medically assessed by nurse Ms. Porter on 2-01-15. the [sic] records will substantiate these facts.

Dkt. 88-5 at 9.

On June 8, 2015, Mr. Badley filed Remedy No. 817280-A1 with the Central Office; the Central Office rejected the submission on July 21, 2015, concurring with the rationale of the Regional Office and/or Institution for rejection, and stating he needed to file a BP-9 first. *Id.* at 11-13. His BP-11 submission did not include any allegations about the assault by the other inmate or Lieutenant Granger's alleged failure to protect him. *See* Dkt. 88-5 at 12. His request was directed to the loss of property.

### I. Remedy Case No. 818933

On March 19, 2015, a hearing was held on Incident Report No. 2677989, which charged Mr. Badley with possessing drugs (Code 113) and unauthorized items (Code 305) as a result of the items uncovered in the cell search that occurred on January 31, 2015. *See supra* Section III(D). Ultimately, the hearing officer expunged the Code 113 charge for possession of drugs as it was determined that the substance found in Mr. Badley's cell was not heroin, but a powder for a drink. As to the Code 305, the hearing officer found that, based on the greater weight of the evidence, Mr. Badley had possessed unauthorized items, namely over 3,000 stamps with a value of more than $1,480.

Subsequently, on April 27, 2015, Mr. Badley filed Remedy No. 818933-R1, in which he appealed the findings of the hearing officer directly to the BOP's North Central Regional Office. Dkt. 74-11 at 6-18. The Regional Director responded on May 22, 2015, denying his appeal. *Id.* at 4-5. Mr. Badley then submitted Remedy No. 818933-A1 to the Central Office, requesting "expungement of a code 305." *Id.* at 2-3. The Central Office responded on September 21, 2016, denying his appeal. *Id.* at 1.

There are no allegations regarding Lieutenant Granger or his alleged failure to protect Mr. Badley from an attack by another inmate in the submissions related to Remedy Case No. 818933.

### J. Remedy Case No. 874630

On August 31, 2016, Mr. Badley filed Remedy No. 874630-F1, in which he alleges that Officer Sims violated his constitutional rights by continually searching his cell and harassing him in August 2016. Dkt. 74-13 at 2-8. The Warden responded to this remedy on September 28, 2016. *Id.* at 1. Mr. Badley appealed to the Regional Office, submitting Remedy No. 874630-R1 on October 24, 2016. Dkt. 74-12 at 5. The Regional Director responded on November 14, 2016. *Id.* at 4. Mr. Badley filed Remedy No. 874630-A2 with the Central Office on February 10, 2017; the Central Office responded to this remedy on July 18, 2017. *Id.* at 1-3.

There are no allegations regarding Lieutenant Granger or his alleged failure to protect Mr. Badley from an attack by another inmate in the submissions related to Remedy Case No. 874630.

### K. Remedy Case No. 900769

On May 3, 2017, Mr. Badley submitted Remedy No. 900769-F2, in which he complains that a unit manager confiscated his clear sterile bin on March 24, 2017. Dkt. 74-14 at 6-7. The Warden responded to this remedy on June 5, 2017. *Id.* at 8-9. Mr. Badley subsequently filed Remedy No. 900769-R2 with the Regional Office on June 26, 2017; the Regional Director responded on July 19, 2017. *Id.* at 3-5. On September 25, 2017, Mr. Badley filed Remedy No. 900769-A1 with the BOP's Central Office; the Central Office responded on October 31, 2017. *Id.* at 1-2.

There are no allegations regarding Lieutenant Granger or his alleged failure to protect Mr. Badley from an attack by another inmate in the submissions related to Remedy Case No. 900769.

## IV. Discussion

Defendant Lieutenant Granger seeks dismissal of this action on the basis that Mr. Badley failed to exhaust his available administrative remedies prior to filing this action. It is undisputed that Mr. Badley was familiar with and utilized the BOP's administrative remedy process. It is also undisputed that Mr. Badley failed to present any allegations related to an assault by an inmate or Lieutenant Granger's failure to protect him except in a BP-10 filed in Remedy Case No. 817820. That form is insufficient because it was directed only to the recovery of lost property and was not timely filed. Neither the BP-9 nor the BP-11 of Remedy Case No. 817820 alleged that Lieutenant Granger forced the cell assignment knowing of any danger to Mr. Badley.

Mr. Badley argues that: (1) he provided sufficient notice of his claims against Lieutenant Granger in submissions naming Lieutenant Granger or generally discussing retaliatory behavior; (2) Remedy Case No. 817820 provided sufficient notice of his failure to protect claim against Lieutenant Granger; and (3) his sensitive BP-9 was improperly denied and the denial of his request prevented him from exhausting his claim. *See* Dkt. 87 at 11-12.

The level of detail necessary in a grievance will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Where the administrative policy is silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002); *see also Wilder v. Sutton*, 310 Fed. Appx. 10, 15, 2009 WL 330531, *4 (7th Cir. 2009) ("prisoners must only put responsible persons on notice about the conditions about which they are complaining"); *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (stating that the exhaustion requirement is "designed to alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) (noting that the

exhaustion requirement "give[s] the prison administration an opportunity to fix the problem—or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner"). An offender "need not lay out the facts, articulate legal theories, or demand particular relief" so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong,* 297 F.3d at 650.

Mr. Badley's submissions in the various remedies focused on allegations of falsification of evidence, testing of heroin, a May 2014 search and confiscation of stamps, and loss of property. Although Lieutenant Granger is occasionally named in Mr. Badley's submissions, the allegations relate to the May 2014 search and confiscation of stamps or searches of his cell. Merely naming Lieutenant Granger in a remedy does not serve to exhaust any and all claims that Mr. Badley may have against him. The central inquiry concerns whether the remedy served to alert prison officials to the problem or conditions about which the inmate was complaining, not the naming of a particular individual. *See Jones*, 49 U.S. at 219 ("[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that may be sued."); *Wilder v. Sutton*, 310 F. App'x 10, 15 (7th Cir. 2009) (unpublished) ("[P]risoners must only put responsible persons on notice about the conditions about which they are complaining."); *Muhammad v. Rupska*, Cause No. 2:15-cv-00228-JMS-MJD, 2017 WL 2734621, at *3 (S.D. Ind. June 26, 2017) (concluding that plaintiff's grievances complaining that he had been denied medically necessary shoes was sufficient to put the prison on notice that the plaintiff was challenging the denial of orthopedic shoes, regardless of the fact that he did not mention the individual defendants in his grievance).

The sole mention of an assault by a mentally unstable inmate was in a BP-10 in Remedy Case No. 817280. However, the short mention was part of a lengthy submission, reproduced below, submitted as an appeal of an earlier remedy submission that Mr. Badley himself

14

characterized as "not alleging any particular staff misconduct" and being "about [his] property."

*See* Dkt. 88-5 at 1, 6, 9.

> Part A - REASON FOR APPEAL   This is an appeal of the denial of my remedy #817280-F1 that was submitted with the above mentioned remedy specifically copied and attached with 4 attachments by Counselor Tatlock and witnessed by inmate Kennedy #06880-043 who also turned in a remedy himself in each others presence. The reason provided for the denial was it was untimely and no copies of attachments. The Bp9 was in fact returned with the 4 attachments minus the one they took still attached to the complaint. I was first aware of my property being missing/lost/destroyed on 3-19-15 when i was released from SHU to inventory/notice that my property and what was missing. There are many inmates that can witness, be a witness to the loss and destuction of my property as well as officer Browning. He in fact seen personally that the inventory that he viewed was substantially not available as I received it from the release of SHU. I spent 49 days in SHU from the date of 1-31-15. It was no way I could have known what of my property would be missing before the release. I was not provided at anytime a BP-A0383 property formas required by policy or a BP-A0402 confiscation form if property was confiscated to justify contraband as required as well under 5580.08. When I inquired the whereabouts of my property I was requested to file a BP8 attempt to informally resolve the matter first before the filing of a tort claim.
>
> I turned in the BP8 on 3-31-15 to counselor Tatlock after finally gaining access to him with time to prepare said BP8 as required and was given a verbal response date due on 4-7-15. on 4-10-15 I received a documented response from Tatlock from the BP8 and prepared and turned in the BP9 remedy#817280-F1 with the added attachments required 4 each. How can it possible that I am untimely from this filing? This is repeatedly and purposeful way to attempt to circumvent and prevent these filings of violations by staff from the loss/destuction of my property and to have it answered on the merits of this complaint. This is a violation of 3420.09 concealment of facts and documents attempting to repeatedly hide the violations and truth from being heard yet again about violations. This is repeated pattern shown, None of the BP8 responses are signed with dates, due dates and signed by department Heads and dated as required by policy. Am I to be held liable for these violations in attempt to prevent my filing? It is obvious The Administration or personell responsible for making sure that these requirements are followed to prevent these violations are not enforcing them upon those responsible. As the Attached Bp8/BP9 will describe, I would not have been subjected to the loss/destruction of my personal property and to the intentional infliction of emotional distress by these continued actions of misconduct or attempted actionsby staff. i was sent to SHU for a knowingly false heroin charge by Lt. Granger on 1-31-15 triggering all of this and the causing of these filings about my property. ==I was intentionally placed in a cell with a mentally unstable inmate on 1-31-15 which I attempted to reject to be roomates with but was denied the request and forced to go in there with. On 2-01-15 i was assaulted by this inmate Ward ID#== unknown but the region can in fact retrieve these facts. I was medically assessed by nurse Ms. Porter on 2-01-15. the records will substantiate these facts.
>      I have been continuosly been subjected intentionally to both physical and mental harm by these continued actions of Misconduct by staff.
>      The date of this rejection was 4-13-15. this was delievered to me on **4-27-15** by officer Burns and Zehner when it should have been delivered by counselor with a date showing the delivery as required. this is seen and taken again as a purposeful attempt to make my filing be untimely and attempt to discourage future filings. I have not received any of the filings of BP9 filings that has been provided in response due time on time yet at this Institution. the only filings I recieve is those that has been rejected. they have in fact not answered none of my BP9 filings at all.
>      I respectfully request my remedy # 817280-F1 be reinstated and be heard and answered on its merits. I understand my rights to file a tort claim in which I may have been forced to do. I tried to respectfully resolve this without litigation. This is a pattern of continued misconduct. I respectfully requested to counselor Tatlock why was I not provided a receipt of receiving the rejection and the date. His response was I am no longer your counselor. He was transferred to another area but that should not exclude his obligations.

Dkt. 88-5 at 8-9 (highlighting added). This mere mention is insufficient to put the BOP on notice that Mr. Badley was specifically complaining about Lieutenant Granger's failure to protect him from an assault by Ward.

Even if this one mention were sufficient to put the BOP on notice, Mr. Badley failed to exhaust his claim in Remedy Case No. 817280. The BP-9 was rejected by the Institution as untimely because it was filed more than 20 days after the incident occurred. Mr. Badley asserts that Remedy Case No. 817280, filed on March 24, 2015, was timely because he did not know his property was missing until he was released from the Secured Housing Unit (SHU) on March 19, 2015. However, to the extent Remedy Case No. 817280 is construed to disclose Mr. Badley's claim that Lieutenant Granger failed to protect him from an assault by Ward, the attack occurred on February 1, 2015, and Mr. Badley had 20 calendar days from the date of the assault to complete his informal resolution and submit a proper BP-9. *See* 28 C.F.R. § 542.14. Mr. Badley does not provide an explanation for why he did not timely file a submission relating to the assault by February 21, 2015. The BP-9 for Remedy Case No. 817280 was not filed until April 13, 2015, almost two months late. Moreover, Mr. Badley does not even mention the assault until May 5, 2015, over three months after the incident.

Mr. Badley also asserts he was prevented from exhausting his claim because his sensitive BP-9 was improperly denied. *See* Dkt. 87 at 11-12. Mr. Badley does not specifically identify which sensitive remedy he is referring to, but the only sensitive remedy he submitted was Remedy No. 810817-R1. *See supra* Section III(E). However, the submissions in Remedy Case No. 810817 only discuss a search of Mr. Badley's cell that Lieutenant Granger conducted and the prior May 2014 search and seizure, and do not allege any failure to protect or assault by an inmate. *See* Dkt. 74-6. Thus, Remedy Case No. 810817 is of no help to Mr. Badley here.

Moreover, to the extent Mr. Badley is more generally asserting that the administrative remedy process was "unavailable" to him following his February 1, 2015, assault, such a claim is rebutted by his own admission and remedy filings. Mr. Badley admits that on February 2, 2015, the day after the assault, another inmate provided him with two BP-9 forms. Dkt. 88 at 2. Moreover, Mr. Badley was able to submit three other remedies within the twenty day period after his assault and during his confinement in the SHU between January 31, 2015, and March 19, 2015 – Remedy No. 810611-R1 on February 13, 2015, Remedy No. 810817-R1 on February 13, 2015, and Remedy No. 810796-F1 (requesting paperwork from the drug testing facility) on February 17, 2015. *See* Dkt. 74-5 at 8-9. Thus, Mr. Badley cannot credibly allege that the administrative remedy process was unavailable to him.

Defendant Lieutenant Granger has therefore met his burden of showing that Mr. Badley failed to exhaust his administrative remedies before filing this lawsuit as to the failure to protect claim. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Badley's claim against Lieutenant Granger should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## V. Conclusion

Defendant Lieutenant Granger's motion for summary judgment, dkt. [74], is **granted**. Judgment consistent with this Entry, the Entry of June 18, 2018, dkt. 100, and the Entry of January 30, 2018, dkt. 55, shall now issue.

**IT IS SO ORDERED.**

Date: 6/25/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

ANDRE BADLEY
35563-060
FLORENCE - HIGH USP
FLORENCE HIGH U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 7000
FLORENCE, CO 81226

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
Gina.Shields@usdoj.gov